UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| ELIZABETH ASHLINE, | : | CASE NO. 3:18-CV-0434 |
|---|---|---|
| Plaintiff | : | |
| v. | : | (Chief Magistrate Judge Schwab) |
| TRI-STATE ENVELOPE CORPORATION, *et al.*, | : | |
| Defendants | : | |

**MEMORANDUM OPINION**
November 27, 2018

**I. Introduction.**

The plaintiff Elizabeth Ashline ("Ashline") alleges a number of claims against the defendants Tri-State Envelope Corporation ("Tri-State"), R.P. Mills Associates, Inc. ("R.P. Mills"), and Michael E. Ashline ("Michael Ashline"). Ashline's claims are based on a divorce decree issued by the Schuylkill County Court of Common Pleas. She brings claims under the Employee Retirement Income Security Act of 1974 ("ERISA") as well as claims of breach of contract. R.P. Mills has moved to dismiss the complaint against it, and for the reasons discussed below, we will grant R.P. Mills' motion.

## II. Background and Procedural History.

On February 21, 2018, Ashline began this action by filing a complaint against Tri-State, R.P. Mills, and Michael Ashline. She alleges the following in her complaint as to R.P. Mills.

On November 17, 1997, the Schuylkill County Court of Common Pleas issued a "Domestic Relations Order" in the form of a decree of divorce ("Divorce Decree") that entitled Ashline to a certain portion of Michael Ashline's retirement benefits. *Doc. 1* at ¶ 10. Upon demand, Ashline was to receive proceeds from Michael Ashline's retirement benefits when either of the two attained the age of sixty-five. *See Doc. 1* at ¶ 12. As of the date of the complaint in this case, Ashline was sixty-six years old, but Michael Ashline was not sixty-five or older. *See Doc. 1* at ¶ 12.[1]

Michael Ashline earned the retirement benefits, comprised of a pension plan, an Employee Stock Option Plan ("ESOP"), and a 401(k) plan, through his employment with Tri-State. *See Doc. 1* at ¶ 11. According to Ashline, R.P. Mills was the administrator of Tri-State's retirement, pension, 401(k), and ESOP plans. *Id.* at ¶ 13. R.P. Mills also allegedly handled the advisory, depository, and distribution

---

[1] Michael Ashline later died on July 22, 2018. *See Doc. 29* at 5. To date, no one has filed a motion for the substitution of the proper party in accordance with Fed.R.Civ.P. 25(a)(1).

"responsibilities for Defendant Tri-State in addition to the regulatory and fiduciary responsibilities according to law." *Id.*

On June 30, 2011, Ashline provided notice to R.P. Mills that she maintained "a springing interest" in Michael Ashline's retirement benefits because of the Divorce Decree. *Id.* at ¶ 14.[2] Tri-State also had notice of the Divorce Decree. *Id.* at ¶ 15. According to Ashline, R.P. Mills nevertheless distributed benefits to Michael Ashline without providing her notice or any benefits. *Id.* at ¶¶ 35, 40, 46–47.

Ashline asserts claims for breach of contract and violations of ERISA against R.P. Mills in Counts III, IV, and V of her complaint. *See Doc. 1* at 7-11.

On July 2, 2018, R.P. Mills filed a motion to dismiss the complaint and a brief in support of that motion,[3] alleging that the complaint fails to state a claim upon which relief can be granted as to counts III, IV, and V and that this Court lacks subject-matter jurisdiction as to counts IV and V, the ERISA claims. Ashline filed a brief in opposition to that motion, and R.P. Mills then filed a reply brief.

---

[2]  Although Ashline states in her complaint that this notice is attached to the complaint, there are no attachments to the complaint.

[3]  Although Michael Ashline and Tri-State have alleged in their answers that the complaint fails to state a claim upon which relief can be granted and that this Court lacks subject-matter jurisdiction, they have not filed motions to dismiss. Thus, the Court will refrain from addressing issues relating to those two defendants at this time.

On August 30, 2018, the parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned.

**III. We analyze R.P. Mills' motion to dismiss as a motion under Fed.R.Civ.P. 12(b)(6), rather than Fed.R.Civ.P. 12(b)(1).**

Contending that the complaint fails to state a claim upon which relief can be granted, R.P. Mills moves to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). Contending that Ashline does not have standing to bring claims under ERISA, R.P. Mills also moves to dismiss the ERISA claims against it under Fed.R.Civ.P. 12(b)(1), which governs the dismissal of an action for lack of subject-matter jurisdiction. "To bring a civil action under ERISA, a plaintiff must have constitutional, prudential, and statutory standing." *Leuthner v. Blue Cross & Blue Shield of Ne. Pennsylvania*, 454 F.3d 120, 125 (3d Cir. 2006). Here, R.P. Mills does not contend that Ashline does not have constitutional or prudential standing. Rather, it argues that she does not have standing because she is neither a participant in nor a beneficiary of the plans at issue as required to bring a claim under ERISA. That is an argument about statutory standing, which "is simply statutory interpretation: the question it asks is whether Congress has accorded *this* injured plaintiff the right to sue the defendant to redress [her] injury." *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 294–95 (3d Cir. 2007) (italics in original). Such a statutory

4

standing argument, however, does not implicate the court's subject-matter jurisdiction, and thus Fed.R.Civ.P. 12(b)(1) is not applicable. *See Humphrey v. GlaxoSmithKline PLC*, 905 F.3d 694, 701 (3d Cir. 2018) ("Because this case [a case under the Racketeer Influenced and Corrupt Organizations Act] does not involve Article III standing, but rather presents an issue of statutory standing, subject matter jurisdiction is not implicated, and the parties incorrectly relied on Rule 12(b)(1)"). Accordingly, we will address R.P. Mills' motion solely as a Fed.R.Civ.P. 12(b)(6) motion to dismiss.

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.[4]

---

[4] R.P. Mills has attached documents to its motion to dismiss, including a declaration and exhibits. For purposes of the motion at bar, of those documents, we will consider only the Divorce Decree, on which Ashline relies in her complaint.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769–70 (M.D. Pa. 2012). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and the court must draw all reasonable inferences from the facts alleged in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien &*

*Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994). But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). A court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010) (footnote and citations omitted) (quoting *Iqbal,* 556 U.S. at 675, 679).

## IV. Discussion.

### A. The complaint fails to state an ERISA claim upon which relief can be granted.

"ERISA was enacted 'to protect . . . the interests of participants in employee benefit plans and their beneficiaries.'" *McCann v. Unum Provident*, 907 F.3d 130, 143 (3d Cir. 2018) (quoting 29 U.S.C. § 1001). "ERISA allows a 'participant [in] or beneficiary' of an ERISA plan to bring a civil action to 'recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" *Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, 625 F. App'x 169, 174 (3d Cir. 2015) (quoting 29 U.S.C. § 1132(a)(1)(B)). "Persons with an interest in a pension plan may bring a civil suit under ERISA's enforcement provisions only if they are either a participant or beneficiary." *Boggs v. Boggs*, 520 U.S. 833, 846 (1997).

Here, Ashline does not allege that she is a participant in the plans at issue. Rather, she alleges that she is a beneficiary of those plans. A "beneficiary" under ERISA is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C.A. § 1002(8). Ashline does not contend that she is a named beneficiary of the plans. Rather, she contends that she is a beneficiary through the Divorce Decree.

ERISA contains an anti-alienation provision that provides: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C.A. § 1056(d)(1). ERISA, however, sets "forth a process to give effect to divorce decrees and state-court orders that pertain to ERISA regulated plans if the order is determined to be a QDRO [Qualified Domestic Relations Order]." *Files v. ExxonMobil Pension Plan*, 428 F.3d 478, 481n.2 (3d Cir. 2005). "A QDRO is a type of domestic relations order that creates or recognizes an alternate payee's right to, or assigns to an alternate payee the right to, a portion of the benefits payable with respect to a participant under a plan." *Boggs*, 520 U.S. at 846 (citing 29 U.S.C. § 1056(d)(3)(B)(i)). "A domestic relations order, in turn, is any judgment, decree, or order that concerns 'the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant' and is 'made pursuant to a State domestic relations law (including a community property law).'" *Id*. (quoting § 1056(d)(3)(B)(ii)).

"QDRO's, unlike domestic relations orders in general, are exempt from . . . the pension plan anti-alienation provision . . . ." *Id.* "In creating the QDRO mechanism Congress was careful to provide that the alternate payee, the 'spouse, former spouse, child, or other dependent of a participant,' is to be considered a plan beneficiary." *Id*. at 847 (quoting 29 U.S.C. § 1056(d)(3)(K)). "[I]n the absence of a

QDRO, a plan violates ERISA if it transfers funds to anyone other than the participant or his designated beneficiary." *Winters v. Kutrip*, 47 F. App'x 143, 147 (3d Cir. 2002).

Here, the divorce decree provides in pertinent part:

> That portion of the employee stock option plan and pension plan of Plaintiff, that has accrued from the date Plaintiff and Defendant married to the date of separation (10/16/76 to 9/23/93) shall be distributed equally at the time Plaintiff receives the same under the provisions of the plan. The parties shall equally share the expense of having a Qualified Domestic Relations Order drafted which will be acceptable to the employer to effectuate this distribution.

*Doc. 19-4* at 1. There is no dispute that the Divorce Decree is a domestic relations order, but the question is whether it is a QDRO.

"A domestic relations order is a QDRO if it meets the requirements of 29 U.S.C. §§ 1056(d)(3)(C) & (D)." *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 274 n.1 (3d Cir. 2007). "Under § 1056(d)(3)(C), the domestic relations order must 'clearly specif[y]' the following:

> (i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee,
> (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,
> (iii) the number of payments or period to which such order applies, and
> (iv) each plan to which such order applies.

10

*Id*. (quoting 29 U.S.C. § 1056(d)(3)(C)). "And under § 1056(d)(3)(D), a domestic relations order will be considered a QDRO 'only if' it:

> (i) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,
> (ii) does not require the plan to provide increased benefits (determined on the basis of actuarial value), and
> (iii) does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order.

*Id*. (quoting 29 U.S.C. § 1056(d)(3)(D)).

Here, the Divorce Decree does not meet the requirements to be a QDRO. Among other things, it does not contain any mailing addresses and it does not clearly set forth the manner in which the amount of benefits will be determined. Further, the Divorce Decree specifically provides that the parties shall share the expense of preparing a QDRO, which shows that the Divorce Decree was not intended to be a QDRO. Moreover, Ashline does not contend that the Divorce Decree is a QDRO. Rather, she asserts that she may still obtain a QDRO in the future, even though Michael Ashline has recently died. Ashline may be able to obtain a QDRO in the future. *See Files v. ExxonMobil Pension Plan*, 428 F.3d 478, 491 (3d Cir. 2005) ("Nothing in the statute, or in our precedent, requires that a QDRO be in place prior to the death of a plan participant when the QDRO that is ultimately obtained by engaging the statutory process simply seeks to enforce a separate interest in a

11

pension benefit that existed before the death of the plan participant."). But it is clear that she does not currently have a QDRO. Thus, she is not a beneficiary under ERISA, and she fails to state a claim for benefits or for breach of fiduciary duty under ERISA.

### B. The complaint fails to state a breach-of-contract claim upon which relief can be granted against R.P. Mills.

Under Pennsylvania law,[5] "[i]t is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016). Here, R.P. Mills argues that Ashline has failed to plead a breach-of-contract claim because she has not identified a contract between her and R.P. Mills. Although Ashline's brief in opposition to the motion to dismiss contains a point heading that reads "Plaintiff's Breach of Contract Claim against RPM Should Not be Dismissed," there is no argument under that point heading. *See Doc. 23* at 8.

---

[5] Neither party has raised any choice-of-law issue. We apply the law of Pennsylvania, which is the forum state, given that the divorce decree was issued by a Pennsylvania court, the retirement benefits that are subject to the divorce decree arose out of Michael Ashline's employment in Pennsylvania, by a Pennsylvania company, and a Pennsylvania company, R.P. Mills, allegedly administers those benefits.

Further, we agree with R.P. Mills that Ashline has failed to identify a contract between her and R.P. Mills. The only contract involving R.P Mills that Ashline identifies in her complaint is a contact between R.P. Mills and Tri-State regarding the administration of the plans at issue. But Ashline does not, and cannot credibly, allege that she was a party to that contract.

Nor has Ashline alleged facts from which it could reasonably be inferred that she was an intended third-party beneficiary of the contract between R.P. Mills and Tri-State. Pennsylvania has adopted § 302 of the Restatement (Second) of Contracts, which "allows an 'intended beneficiary' to recover for breach of contract." *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 168 (3d Cir. 2008). Section 302 of the Restatement provides, in relevant part:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intentions of the parties and either
> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Ashline has not alleged any facts about the provisions of the contract between R.P. Mills and Tri-State. Thus, there is no basis to conclude that she was an intended third-party beneficiary of that contract. Further, as mentioned above, she has not made any argument in support of her breach-of-contract claim. Thus, she

13

fails to state a breach-of-contract claim against R.P. Mills based on the contract between R.P. Mills and Tri-State.

Ashline also refers to the Divorce Decree as a contract. Even assuming for the sake of argument that the Divorce Decree can be construed as a judicially approved contract, *see Gruber v. PPL Ret. Plan*, 520 F. App'x 112, 116 (3d Cir. 2013) (stating that "the interpretation of a judicially-approved contract—the QDRO" was at issue there), R.P. Mills was not a party to that contract. And Ashline cannot sidestep the requirements of ERISA with respect to QDROs by labeling her claim as a breach-of-contract claim. Accordingly, the complaint fails to state a breach-of-contract claim upon which relief can be granted against R.P. Mills.

### C. Leave to file an amended complaint.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008). The court "must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend." *Id.* Here, because Ashline has not made any argument in opposition to the motion to dismiss her breach-of-contract claim against R.P. Mills and because she does not have a QDRO, amendment at this time would be futile. If,

however, Ashline were to obtain a QDRO in the future, she may then move to amend or if this case is not pending at the time, she may file another action.

**V. Summary.**

Based on the foregoing, we will grant R.P. Mills' motion to dismiss the complaint.[6]   An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
Chief United States Magistrate Judge

---

[6]   Because we are granting R.P. Mills' motion to dismiss, the discovery disputes between R.P. Mills and Ashline are moot as are R.P. Mills' letter requests (*docs. 37 & 38*) to file motions to compel discovery.